444UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Samuel LeFlore,

             Petitioner,

    -vs-

James Conway,
Superintendent,
Attica Correctional Facility,

             Respondent.
_____

**DECISION AND ORDER**

**No. 05-CV-283A**

## I.   Introduction

*Pro se* petitioner Samuel LeFlore ("Petitioner") has filed a timely petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his custody pursuant to a judgment entered July 19, 2001, in New York State, Supreme Court, Monroe County, convicting him, after a jury trial, of Murder in the Second Degree (New York Penal Law ("Penal Law") § 125.25[2]), Assault in the First Degree (Penal Law § 120.10[1]), two counts of Criminal Possession of a Weapon in the Second Degree (§ 265.03[2]), and Criminal Possession of a Weapon in the Third Degree (§ 265.02[4]).

For the reasons stated below, the petition is denied.

## II.  Factual Background and Procedural History

The charges arise out of a shooting incident that occurred on December 11, 2000 at "Aaah's" nightclub ("Aaah's" or "the club") in the City of Rochester.

1

On December 11, 2000, at about 2:00 a.m., Greece Police Officer Stephen Chatterton ("Chatterton"), on duty near "Aaah's", heard gunshots from the club's parking lot. Hearing Minutes (H.M.) 201-02. As he drove into the club's lot from Center Place Drive, he heard a second volley of shots. H.M. 202. Several members of a large crowd on hand told Chatterton that some men in a jeep had just been shot by a black male in a white car. H.M. 202-03. Chatterton saw a white care speeding away from the scene and radioed its description to other officers. H.M. 203. The owner of the club, Phil Scardino ("Scardino"), approached Chatterton and told Chatterton he had the right car, and also described the shooter's sweater and pants. H.M. 205, 221.

Sergeant Richard Kowalski ("Kowalski") responded to the scene and proceeded to block off traffic. H.M. 227-28. When Kowalski saw a small white car matching Chatterton's description approaching him, he got out of the patrol car and motioned for the driver to pull over, but the white car sped past him. H.M. 228-29. Kowalski followed the vehicle and broadcast that he was in pursuit of the white car. H.M. 229-30. The car sped through a "Kodak" parking lot and crashed through two wooden barrier gates in the process. H.M. 230. Other patrol cars joined Kowalski, and the white car led police on a high speed chase on Interstate 490 and the Inner Loop. H.M. 231-32. At approximately 2:14 a.m., with all four tires in shreds from having run over spikes laid down by police, the white

car came to a stop. H.M. 232-33. Inside the vehicle were Keyvin Walker, Rosando Santiago, Ricky Orta, and Petitioner. Police pulled Petitioner from the car, placed him on the ground and handcuffed him. H.M. 188-89, 244. Petitioner was wearing clothing that matched Scardino's description of the shooter. H.M. 23. Scardino arrived at the scene of the stop thereafter and identified the white car as the car that was involved in the shooting. H.M. 235-36.

Meanwhile, the two occupants of the jeep were rushed to Rochester General Hospital. H.M. 409. Both occupants had been shot in the chest. One of the occupants died, and the other survived. The bullets from both victims were recovered. H.M. 410-11, 461, 687.

At approximately 4:00 a.m., police brought all four occupants of the white car back to the scene of the shooting to conduct a "show-up" identification. H.M. 59. One eyewitness indicated Petitioner "looked like the guy who did it", but also indicated she was fearful of retaliation. H.M. 80-83. The other eyewitness, Scardino, indicated Petitioner was not the shooter, but also indicated he was hesitant to cooperate with police for fear of having his club shut down. H.M. 19-21, 59-61. At about the same time the "show-up" was taking place, police had retraced the route of the car chase and recovered a nine-millimeter Astra handgun in a parking lot. H.M. 234-35; Trial Transcript (T.T.) 583, 593-94,

3

672.  A civilian later found the second nine-millimeter Bryco handgun about a block from where the Astra handgun was found. T.T. 607-08.  Officers collected a bullet and two casings from within the jeep, and five more casings from the immediate area. T.T. 554-56, 643, 660-61.  A paramedic also found a spent round in the fatally wounded victim's sweater.  T.T. 603.  Ballistics tests later determined that the shell casings were all fired from the Astra handgun, except for two of the bullets which were fired from the Bryco handgun.  T.T. 724-35.

All of the individuals inside the white vehicle were taken to the police station.  Each of these individuals eventually implicated Petitioner in the shooting.  H.M. 14, 44-48, 73-76; T.T. 376-79.

At approximately 6:37 a.m., Petitioner was administered his Miranda warnings, and he waived his rights.  H.M. 8-10.  The police did not conduct an interview regarding the shooting at that time. H.M. 10-11.  Petitioner remained in custody for approximately the next ten hours, wherein police periodically checked up on him and brought him food and beverages.  H.M. 122-24, 211.  Between 4:43 p.m. and 6:17 p.m., police questioned Petitioner, which yielded a three-page statement that Petitioner reviewed and signed. H.M. 119-21.  Police resumed questioning at approximately 7:10 p.m., which yielded an additional two-page written statement

from Petitioner recounting the events of December 11, 2000. H.M. 14; T.T. 434.

Petitioner was arraigned before a Greece Town Judge at 8:40 p.m. H.M. 133. After returning to the police station, Petitioner asked to place a telephone call, which he was permitted to do. H.M. 146. While Petitioner was on the telephone, police overheard Petitioner say, "I shot two people. I shot two people. We was at the bar, yeah, outside the bar." H.M. 148-50.

A combined probable cause and <u>Huntley</u>[1] hearing was held on April 26, 2001 and April 27, 2001. The trial court determined that police had probable cause to arrest Petitioner, and denied his motion to suppress statements made by him at the police station on the afternoon of December 11, 2000. <u>See</u> Decision and Order of the Supreme Court, Monroe County dated May 29, 2001.

Following a jury trial, Petitioner was convicted and sentenced to twenty five years to life for Murder in the First Degree, a consecutive term of fifteen years for Assault in the First Degree, concurrent terms of ten years, plus five years post release supervision for Criminal Possession of a Weapon in the Second Degree and a concurrent term of five years for Criminal Possession of a Weapon in the Third Degree. Petitioner was acquitted of Intentional Murder.

---

[1] <u>People v. Huntley</u>, 15 N.Y.2d 72 (N.Y. 1965) (trial court must conduct pre-trial hearing to determine voluntariness of defendant's statements to be used as evidence at trial).

Petitioner appealed his conviction to the Appellate Division, Fourth Department, and his conviction was unanimously affirmed. People v. LeFlore, 303 A.D.2d 1041 (4th Dept 2003). Petitioner sought leave to appeal to the New York State Court of Appeals, which was denied on June 17, 2003. People v. LeFlore, 100 N.Y.2d 563 (N.Y. 2003).

On June 2, 2004, Petitioner filed a *coram nobis* application, which was denied on November 19, 2004. People v. LeFlore, 12 A.D.3d 1206 (4th Dept 2004). Petitioner appealed the decision, which was denied on February 18, 2005. Petitioner filed a motion for reconsideration, which was denied on March 29, 2005.

This habeas petition followed[2].

---

[2]     On April 25, 2005, Petitioner filed a habeas corpus petition in which he raised four grounds for relief. On or about August 5, 2005, Petitioner withdrew the petition so that he could return to state court to exhaust an additional claim, namely that he been unfairly convicted of depraved indifference murder. On or about August 29, 2005, Petitioner filed a N.Y. Crim. Pro. Law ("CPL") § 440.10 motion in state court, claiming the trial court erred in charging depraved indifference murder, which was denied on state procedural grounds. Petitioner appealed the decision, which was denied. On or about May 24, 2006, Petitioner filed -- what he deemed -- an "amended" petition, wherein he raised his four original claims and the one additional claim. On September 21, 2006, the U.S. District Court for the Western District issued an Order stating that the "amended" petition would be construed as a motion to reopen to stay and to amend the petition. On February 8, 2007, Petitioner filed a second motion for permission to amend, wherein he raised the four original claims and the one additional claim. On April 13, 2007, Respondent filed an answer to Petitioner's motion to amend the habeas petition, arguing that the one additional claim is untimely and does not "relate-back" to the original habeas petition, as required by 28 U.S.C. § 2254(d)(1), (2) and Williams v. Taylor, 529 U.S. 362, 375-76 (2000). On June 21, 2007, Petitioner requested to withdraw his petition. On September 28, 2007, the District Court issued an Order stating that, in light of Petitioner's motion to withdraw his petition, the Court considered his motion to amend the petition withdrawn, and requested Petitioner to inform the Court whether he wished to withdraw his petition. On October 15, 2007, Petitioner notified the Court that he did not wish to withdraw the petition. Because it is unclear whether the amended petition is properly before this Court, this Court will construe the ambiguity in favor of Petitioner and address all five of his claims.

## III. General Principles Applicable to Habeas Review

### A.    The AEDPA Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000).  The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not *dicta*) of the Supreme Court existing at the time of the relevant state-court decision.  Williams, 529 U.S. at 412;  accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Parsad v. Greiner, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), cert. denied sub nom. Parsad v. Fischer, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the

state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.    Exhaustion Requirement**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State. . . ." 28 U.S.C. § 2254(b)(1)(A); <u>see, e.g.</u>, <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999); <u>accord, e.g.</u>, <u>Bossett v. Walker</u>, 41 F.3d 825, 828 (2d Cir.1994), <u>cert. denied</u>, 514 U.S. 1054 (1995). "The exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts." <u>Daye v. Attorney General</u>, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*), <u>cert. denied</u>, 464 U.S. 1048 (1984).

**C.    The Adequate and Independent State Ground Doctrine**

"It is now axiomatic that 'cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred.'" <u>Dunham v. Travis</u>, 313 F.3d 724, 729 (quoting <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991)). "A habeas petitioner may bypass the independent and adequate state ground bar by demonstrating a constitutional violation that resulted in a fundamental miscarriage of justice, i.e., that he is actually innocent of the crime for which he has been convicted."

9

Id. (citing Schlup v. Delo, 513 U.S. 298, 321 (1995); Murray v. Carrier, 477 U.S. 478, 496 (1986)).

Although the Supreme Court "has repeatedly cautioned 'that the [independent and adequate state law ground] doctrine applies to bar consideration on federal habeas of federal claims that have been defaulted under state law,'" Dunham, 313 F.3d at 729 (quoting Lambrix v. Singletary, 520 U.S. 518, 523 (1997) (emphasis added by Second Circuit), the Second Circuit has observed that "it is not the case 'that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be[,]'" id. (quoting Lambrix, 520 U.S. at 525 (stating that bypassing procedural questions to reach the merits of a habeas petition is justified in rare situations, "for example, if the [the underlying issue] are easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law")).

## IV. Petitioner's Claims

### 1. Fourth Amendment Claim

Petitioner argues that his arrest was illegal and in violation of his Fourth Amendment right for protection against unlawful searches and seizures. Amended Petition (Am. Pet.) ¶17[a], Addendum (Add.), 3-5. More specifically, he contends that the police lacked probable cause when they arrested him, and, as a result, the fruits of the unlawful arrest (i.e., his statements) should have been suppressed. Petitioner raised this claim on

10

direct appeal to the Appellate Division, Fourth Department. The
Appellate Division rejected Petitioner's contention on the merits.

In general, state court defendants are barred from obtaining
habeas relief based upon Fourth Amendment claims. "Where the State
has provided an opportunity for full and fair litigation of a
Fourth Amendment claim, a state prisoner may not be granted habeas
corpus relief on the ground that evidence obtained in an
unconstitutional search or seizure was introduced at his trial."
Stone v. Powell, 428 U.S. 465, 494, (1976) (footnotes omitted). The
Second Circuit has noted that Stone requires only that "the state
have provided the *opportunity* to the state prisoner for full and
fair litigation of the Fourth Amendment claim." Gates v.
Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert.
denied, 434 U.S. 1038 (1978) (emphasis added). A Federal court may
undertake habeas review only in one of two instances: (1) "if the
state provides no corrective procedures at all to redress Fourth
Amendment violations," or (2) if "the state provides the process
but in fact the defendant is precluded from utilizing it by reason
of an unconscionable breakdown in that process. . . ." Id. at 840;
accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to
litigate his Fourth Amendment claim where the state provides a
"'statutory mechanism' for suppression of evidence tainted by an
unlawful search and seizure." McPhail v. Warden, Attica Corr.

11

<u>Facility</u>, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. <u>See</u> N.Y. Crim. Proc. Law ("CPL") § 710.10 et seq.; <u>see also</u> <u>Capellan</u>, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. (McKinney 1984 & Supp.1988) as being facially adequate").

Here, Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with, and indeed took full advantage of, the opportunity to fully adjudicate this matter in state court. Petitioner asserted this claim at a pre-trial hearing, and the trial court determined that police had probable cause to arrest Petitioner and that Petitioner's subsequent statements to police, therefore, should not be suppressed as the fruits of an illegal seizure. The Appellate Division affirmed the trial court's determination of this issue.

Moreover, Petitioner cannot demonstrate that an "unconscionable breakdown" occurred in the courts below. His assertion that appellate counsel was incompetent[3] thereby causing the Appellate Division's incorrect conclusion on this issue does not constitute the sort of "breakdown" referred to in <u>Gates v. Henderson</u>. Nor is Petitioner's dissatisfaction with the outcome of

_____

[3]    See Section "4" below for a discussion of Petitioner's ineffective assistance of appellate counsel claim.

the pre-trial hearing or the Appellate Division's affirmation thereof evidence of a "breakdown" in the state's procedures for litigating Fourth Amendment claims. Rather, an "unconscionable breakdown in the state's process must be one that calls into serious question whether a conviction is obtained pursuant to those fundamental notions of due process that are at the heart of a civilized society." Cappiello v. Hoke, 698 F. Supp. 1042, 1050 (E.D.N.Y. 1988), aff'd, 852 F.2d 59 (2d Cir. 1988) (per curiam); accord, Capellan, 975 F.2d at 70 (observing that some sort of "disruption or obstruction of a state proceeding" of an egregious nature, e.g., the bribing of a trial judge, typifies an unconscionable breakdown). No such disruption is discernable on the record. Even if the state court erroneously decided the issue, a petitioner cannot gain federal review of a Fourth Amendment claim simply because a Federal court may reach a different result. See Capellan, 975 F.2d at 71. Thus, this Court is precluded from considering Petitioner's fully litigated Fourth Amendment claim on habeas review. The claim must be denied.

**2. Fifth Amendment Claim**

Petitioner contends that his statements were taken in violation of his Fifth Amendment right to remain silent. Am. Pet. ¶17[b], Add., 5-7. In particular, he argues the following grounds for claiming that police illegally obtained his confessions:

(1) his statements were the result of an unlawful arrest[4]; and (2) his Miranda warnings had become stale because approximately 10 hours had elapsed from the time he was initially advised of his Miranda rights until the time the police interrogation began. Petitioner raised this claim to the Appellate Division, Fourth Department, and it was rejected on the merits.

Petitioner has not cited, and this Court has not found, any Supreme Court case holding that renewed Miranda warnings are required when there has been a delay in questioning. A number of courts, in fact, have held that the mere passage of time does not, in itself, necessitate the issuance of renewed warnings to the defendant. See, e.g., United States v. Andaverde, 64 F.3d 1305, 1312 (9th Cir. 1995) (citing cases rejecting the need for renewed warnings simply because some time has elapsed). The Supreme Court has declared that the reviewing court should look to the "totality of the circumstances" to determine whether renewed warnings are necessary. Wyrick v. Fields, 459 U.S. 42, 47-48 (1982).

Here, the record reflects that Petitioner was given Miranda warnings at approximately 6:37 a.m., and he knowingly and intelligently waived his rights[5]. H.M. 6-8. The police did not

---

[4]     This issue was addressed under Section "2" above and will not be addressed separately in this section. Petitioner contends that because police lacked probable cause to arrest him, the statements he subsequently made to police should have been suppressed as fruits of an unlawful seizure.

[5]     The police officer who administered the Miranda warnings used a Miranda card to do so. H.M. 10. The relevant portion of the administering officer's testimony is as follows:

immediately conduct an interview regarding the shooting at the time Petitioner was <u>Mirandized</u> because they did not feel they had enough information to a conduct a fruitful interview. H.M. 10-11. Petitioner remained in custody for approximately the next ten hours, throughout the duration of which police periodically checked on Petitioner and brought him food and beverages. H.M. 11-12, 122-24, 211. Between 4:43 p.m. and 6:17 p.m., police resumed questioning Petitioner. H.M. 119-20. Police memorialized the conversation they had with Petitioner in a three-page statement, which Petitioner read and signed. H.M. 122. At approximately 7:10 p.m., police resumed questioning Petitioner further, which yielded another two-page statement that Petitioner read and signed. H.M. 14. Each time that police questioned Petitioner, the police were aware that Petitioner had already waived his <u>Miranda</u> rights. H.M. 120, 167, 208. At no time did Petitioner request to have an

---

Prosecutor: I am showing you People's 1 in evidence. Can you state what, if any, rights you gave to [Petitioner], and replicate how you did so?

Police Officer: I read it directly off of this card. It's a Notification and Waiver. The rights are, one, you have the right to remain silent. You do not have to say anything, if you do not want to. [Petitioner] responded, yes, he understood. And, anything you say can and will be used against you in a court of law. [Petitioner] responded, yes, he understood. You have the right to talk to a lawyer before answering any questions and have him here with you. [Petitioner's] response was, okay. If you can't pay for a lawyer, one will be given to you before any questioning, if you wish. [Petitioner's] reply was, okay. If you do wish to talk to me, you can stop at any time. [Petitioner] replied, okay. And I read the waiver, do you understand what I have just said to you? [Petitioner] responded, yeah -- okay. Do you agree to give up your rights and talk to me now? [Petitioner's] response was, yeah.

attorney present or request to stop speaking with police.  H.M. 12-13, 16, 123, 146, 150, 167, 206, 208.

Petitioner does not allege, nor is there any evidence to suggest, that he was subjected to coercion throughout the period that he was in police custody.  Additionally, Petitioner adduces no facts –- only offers conclusory allegations unsupported by the record -- that the conversations he had with police (and his written statements) were involuntary.  In sum, Petitioner alleges no material change in the circumstances of his interrogation apart from the mere passage of time that would warrant issuance of new warnings.  The police were not required to renew Petitioner's <u>Miranda</u> warnings solely because some ten hours had elapsed.

Accordingly, this Court finds the state court's determination did not contravene or unreasonably apply settled Supreme Court law.  The claim must be denied.

### 3. Prosecutorial Misconduct

Petitioner asserts that prosecutorial misconduct deprived him of his constitutional right to due process and a fair trial.  Am. Pet. ¶17[c], Add. 8-10.  In particular, he argues that the prosecutor (1) improperly elicited testimony from a witness that had been ruled inadmissable by the trial court, and (2) made improper comments on summation.  Petitioner raised this claim to the Appellate Division, Fourth Department, and it was rejected on the merits.  The Appellate Division found that "[t]he court's

curative instructions with respect to [the] alleged misconduct alleviated any possible prejudice to defendant." LeFlore, 303 A.D.2d at 1042 (internal citations omitted).

It is well settled that, in order to obtain habeas relief based upon the misconduct of a prosecutor, "it is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). A constitutional violation will be found only when the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Gonzalez v. Sullivan, 934 F.2d 419, 424 (2d Cir. 1991) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

Moreover, a prosecutor's remarks during summation are grounds for reversal "only when the remarks caused substantial prejudice to the defendant." Id. (citations omitted). Whether the comments caused substantial prejudice to the petitioner is to be assessed by considering "the severity of the misconduct; the measures adopted to cure the misconduct; and the certainty of conviction absent the improper statements." Floyd v. Meachum, 907 F.2d 347, 355 (2d Cir. 1990) (quoting United States v. Modica, 663 F.2d 1173, 1181 (2d Cir. 1981), cert. denied, 456 U.S. 989 (1982)).

The first instance of alleged misconduct occurred when the

prosecutor elicited testimony from a police witness regarding Petitioner's prior criminal arrests for selling crack, which had already been ruled inadmissable by the trial court. Petitioner contends that the prosecutor acted intentionally and maliciously when he elicited this testimony. However, in this instance, an objection was lodged at the time the prejudicial statement was made, and the objection was sustained. T.T. 481-82. Moreover, the court instructed the jury to disregard what it had heard, and offered to give a further curative instruction when the defense moved for a mistrial shortly thereafter. T.T. 481-82, 519. The defense declined the trial court's offer. 521-22. By sustaining the objection and instructing the jury to disregard the statement, the trial court took curative measures to mitigate any prejudice that may have been caused when the prosecutor elicited the testimony regarding Petitioner's prior criminal arrests.

Next, Petitioner contends that the prosecutor improperly denigrated the defense on summation, citing an instance wherein the prosecutor said to the jury: "I ask you to use your good common sense in interpreting the evidence, not to have a wild imagination, as counsel has asked you to do, to speculate." T.T. 791. Proffering such an argument during summation, however, is permissible. See Garcia v. Greiner, No. 01-CV-2470, 2004 U.S. Dist. LEXIS 7343, at *24 (E.D.N.Y. Apr. 28, 2004) ("[t]he prosecutor can properly ask the jury not to be side-tracked by

certain evidence and certain issues to focus on the issues that make out the prosecution's case."). Here, the prosecutor merely exhorted the jury to stay focused on the evidence presented in the case, to employ common sense in interpreting such evidence, and to refrain from speculation.

Petitioner also alleges that, on summation, the prosecutor denigrated the defense by improperly injecting his personal beliefs about the strength of the evidence in the case. Specifically, Petitioner cites an instance wherein the prosecutor -- in response to the defense's argument that Petitioner did not voluntarily waive his Miranda rights when he answered "yeah" instead of a definitive "yes" -- said to the jury: "[t]hat's not reasonable doubt. That's ridiculous." T.T. 814-15. "It is well settled that it is improper for a prosecutor to interject personal beliefs into a summation." United States v. Nersesian, 824 F.2d 1294, 1328 (2d Cir. 1987) (citing United States v. Young, 470 U.S. 1, 8-9 (1985). Nonetheless, the challenged remarks must be evaluated in the context of the trial as a whole, for the government is allowed to respond to an argument that impugns its integrity or the integrity of the case. See United States v. Bagaric, 706 F.2d 42, 60-61 (2d Cir. 1983), cert. denied, 464 U.S. 840 (1983). Thus, when the defense has "attacked the prosecutor's credibility or the credibility of the government agents, the prosecutor is entitled to reply with 'rebutting language suitable to the occasion.'" United

States v. Praetorius, 622 F.2d 1054, 1060-61 (2d Cir. 1979) (quoting United States v. LaSorsa, 480 F.2d 522, 526 (2d Cir. 1973), cert. denied, 414 U.S. 855 (1873)), cert. denied, 449 U.S. 860 (1980).  In this case, the prosecutor's statement was made in response to the defense's argument on summation that Petitioner had not waived his rights voluntarily.  T.T. 769.  This argument was based on the testimony of a police witness who testified that Petitioner replied "yeah" when he asked Petitioner if Petitioner understood he was waiving his rights, but did not ask Petitioner what "yeah" means.  T.T. 769.  Therefore, in light of the defense summation, the prosecutor's rebuttal was not impermissible.

Accordingly, the prosecution's summation, as a whole, was not inflammatory or intemperate.  The proof against Petitioner was compelling enough that the above isolated remarks in an otherwise fair proceeding did not deny Petitioner of a fair trial.  The Appellate Division's denial of Petitioner's prosecutorial misconduct claim was neither contrary to nor an unreasonable application of settled Supreme Court law.  This claim, therefore, must be denied.

### 4.  Ineffective Assistance of Appellate Counsel

Petitioner contends that he was deprived of his Sixth Amendment right to effective assistance of appellate counsel.  Am. Pet. ¶17[d], Add. 10-15.  In particular, he argues that the facts of a single state court case, People v. Hunt, 155 A.D.2d 957

(4th Dept. 1989), are so similar to his case that if appellate counsel had cited this case, the Appellate Division would have concluded that the doctrine of *stare decisis* compelled a reversal of conviction. Petitioner exhausted this claim by raising it in his *coram nobis* application, which was summarily denied by the Appellate Division, Fourth Department on November 19, 2004. Summary denial of Petitioner's motion constitutes an adjudication on the merits of this claim. Sellen v. Kuhlman, 261 F.3d 303, 314 (2d Cir. 2001).

It is well settled Supreme Court law that a Petitioner claiming ineffective assistance of counsel must show that counsel's representation was fundamentally defective, and that, but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687 (1984); Aparicio, 269 F.3d at 95. The Strickland standard of ineffective assistance of counsel applies equally to trial and appellate counsel. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994), cert. denied, 513 U.S. 820 (1994).

In order to satisfy the first prong of Strickland, it is not enough for a petitioner to show that appellate counsel omitted a colorable argument. Aparicio, 269 F.3d at 95. Indeed, counsel is not required to raise all colorable claims on appeal. Id.; see Jones v. Barnes, 463 U.S. 745, 751 (1983). Rather, counsel may

winnow out weaker arguments and focus on one or two key claims that present "the most promising issues for review." <u>Jones</u>, 463 U.S. at 751-53. And, of course, counsel is "strongly presumed to have rendered adequate assistance and [to have] made all significant decisions in the exercise of reasonable professional judgment." <u>Strickland</u>, 466 U.S. at 689-90. In this regard, "strategic choices made after thorough investigation of law and facts . . . are virtually unchangeable." <u>Id.</u> at 690.

To satisfy the second prong of <u>Strickland</u>, a petitioner must show that there is a "reasonable probability" that, but for the deficiency, "the result of the proceeding would have been different." <u>Id.</u> at 694. In the context of a claim of ineffective assistance of appellate counsel, this means that "absent counsel's deficient performance, there was a reasonable probability that [petitioner's] appeal would have been successful before the state's highest court." <u>James v. Artus</u>, 2005 U.S. Dist. LEXIS 6402 *62 (S.D.N.Y. April 15, 2005).

On appeal, Petitioner's counsel advanced three arguments –– one of which was related to Petitioner's alleged unlawful arrest and is the premise of this claim –– which were persuasively articulated in a lengthy brief citing relevant case law. Petitioner contends not that appellate counsel failed to raise the unlawful arrest issue on appeal, but merely that she failed to develop the argument by not citing <u>People v. Hunt</u>, which, according

to Petitioner, is dispositive of his claim.  As Respondent correctly points out, however, counsel properly chose not to argue <u>Hunt</u>'s application to Petitioner's case because the facts of the cases are dissimilar, and, as such, provide no precedential value to Petitioner.  In <u>Hunt</u>, the police placed the defendant –- who matched the general description of a prowler in the area –- in a police vehicle, transported him to a police station, read him his <u>Miranda</u> rights, and then interrogated him for over two hours regarding crimes unrelated to the charge for which he had been detained.  The court held this constituted a "de facto" arrest which requires probable cause (which was lacking), and, therefore, the fruits of the illegal arrest must be suppressed.  <u>Hunt</u>, 155 A.D.2d at 969.  In contrast, in this case, police had probable cause to arrest Petitioner, and did so.  He was properly transported to the police station where he was read (and waived) his <u>Miranda</u> rights, and questioned about the crime (the shooting at "Aaah's") for which he was detained.  Since these cases are factually dissimilar, <u>Hunt</u> supplies Petitioner with no precedent for reversal.  Thus, counsel's decision not to argue application of <u>Hunt</u> was based on the sort of "thorough investigation" of the law that is unchallengeable under <u>Strickland</u>.  <u>Strickland</u>, 466 U.S. at 690.  Because Petitioner has failed to establish that counsel's representation was fundamentally defective, this Court need not reach the second prong of <u>Strickland</u>.

Accordingly, this Court finds that the state court's determination of this claim was neither contrary to nor an unreasonable application of settled Supreme Court law. The claim must be denied.

**5. Claim Related to Depraved Indifference Murder Charge**

Petitioner alleges that the following deprived him of his constitutional right to due process and a fair trial: (1) the verdict is inconsistent because defendant was found guilty of depraved indifference murder and intentional assault; and (2) the trial court erred in charging depraved indifference murder to the jury. Am. Pet. ¶17[e], Add. 15-17. Petitioner supports this contention by arguing that the evidence adduced at trial demonstrated that he acted intentionally –– not recklessly –– when he fired a weapon into a parked vehicle. Petitioner raised this claim to the Appellate Division, Fourth Department on direct appeal. The Appellate Division denied Petitioner's claim on the grounds that it was unpreserved for review, and, in any event, without merit because

> [w]ith respect to the murder count, the evidence . . . establishes that [Petitioner] acted recklessly but not intentionally when he fired a weapon several times through the back window of a vehicle, causing the death of one of the occupants . . . . With respect to the assault count, the evidence establishes that [Petitioner] acted in concert with another person and intentionally caused serious physical injury to one of the victims . . . ."

LeFlore, 303 A.D.2d at 1043 (citations omitted). Petitioner subsequently raised this claim in a CPL § 440.10 motion, and it was denied pursuant to CPL § 440.10(2)(a) because the issue had already been determined on direct appeal. By relying on § 440.10(2)(a), the state court invoked a state procedural rule which constitutes an adequate and independent state grounds for rejecting the claim. See e.g., Cruz v. Berbary, 456 F. Supp. 2d 410 (W.D.N.Y. Oct. 16, 2006) (finding Petitioner's habeas claims procedurally defaulted as trial court dismissed them on state procedural ground, N.Y. Crim. Pro. Law § 440.10(2)(a) & (c); D'Alessandro v. Fischer, No. 01 Civ. 2551, 2005 U.S. Dist. LEXIS 31381 (S.D.N.Y. Nov. 28, 2005) (finding trial court's express reliance on CPL § 440.10(2)(a) indicates court rejected Petitioner's claim on independent and adequate state procedural ground, precluding federal habeas review); Encarnaction v. Walker, 1998 U.S. Dist. LEXIS 23416, No. 96CV329FJSGLS (N.D.N.Y. Aug. 21, 1998) (finding state court's ruling rested on adequate and independent state procedural rule, N.Y. Crim. Proc. Law § 440.10(2)(a) & (b)).

Petitioner is not limited to one C.P.L. § 440.10 application. However, in this instance, it would be futile for Petitioner to raise this issue on a further motion to vacate since the state court already determined the claim lacks merit. Thus, the claim is properly exhausted, but procedurally barred from habeas review. See Coleman, 501 U.S. 722 at 750.

This Court is precluded from considering a procedurally defaulted claim unless Petitioner "can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." Harris v. Reed, 489 U.S. 255, 262 (1989) (citations and internal quotations omitted); see also Schlup, 513 U.S. at 321 (a fundamental miscarriage of justice requires a showing of "actual innocence"). Petitioner fails to allege cause for the default or prejudice attributable thereto, nor does he attempt to show that a fundamental miscarriage of justice will occur should this Court decline to review his claim. This Court finds no basis on the record for overlooking the procedural default. Accordingly, the claim must be denied.

## V.    Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed. Because petitioner has failed to make "a substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), I decline to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court also hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and

therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438, 82 S. Ct. 917, 8 L. Ed.2d 21 (1962).

Petitioner must file any notice of appeal with the Clerk's Office, United States District Court, Western District of New York, within thirty (30) days of the date of judgment in this action. Requests to proceed on appeal as a poor person must be filed with United States Court of Appeals for the Second Circuit in accordance with the requirements of Rule 24 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.

S/Michael A. Telesca

_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED:     October 13, 2009
           Rochester, New York